```
                IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF OKLAHOMA
```

JACK D. BREWER,                    )
                                   )
            Plaintiff,             )
                                   )
v.                                 )      Case No. CIV-14-375-KEW
                                   )
CAROLYN W. COLVIN, Acting          )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

## OPINION AND ORDER

Plaintiff Jack D. Brewer (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 15, 1962 and was 50 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a construction worker and construction foreman. Claimant alleges an inability to work beginning July 15, 2010 due to limitations resulting from osteoarthritis with accompanying pain in his hands, neck, low back, and knees, hypertension, and mental problems.

**Procedural History**

On February 15, 2011, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On January 10, 2013, an administrative hearing was held before Administrative Law Judge ("ALJ") Edmund C. Werre in Tulsa, Oklahoma. She issued an unfavorable decision on January 4, 2013. The Appeals Council denied review of the ALJ's decision on July 1, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to provide a proper analysis at steps four and five; (2) failing to properly evaluate the medical source evidence; and (3) failing to perform a proper credibility determination.

**Step Four and Five Evaluation**

In his decision, the ALJ found Claimant suffered from the severe impairments of osteoarthritis, diabetes mellitus, hypertension, cyclothymic disorder, depressive disorder, post-traumatic stress disorder ("PTSD"), and alcohol abuse. (Tr. 17). The ALJ determined Claimant retained the RFC to perform light work. In so doing, the ALJ found Claimant could occasionally lift up to 20 pounds and frequently up to 10 pounds; stand/walk six hours in an eight hour workday; sit for six hours in an eight hour workday; understand, remember, and carry out simple instructions consistent with unskilled work that is repetitive and routine in nature and able to relate and interact with co-workers and supervisors on a work-related basis only with no or minimal interaction with the general public. The ALJ concluded Claimant could adapt to a work situation with these limitations and his medications could not preclude him from remaining reasonably alert to perform required functions presented in a work setting. (Tr. 19).

After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of office cleaner, food prep worker, grinding machine operator, and production assembler, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 26). As a result, the ALJ determined Claimant was not under

a disability since February 15, 2011, the date the application was filed. Id.

Claimant contends the ALJ failed to pose an appropriate and complete hypothetical question to the vocational expert which included all of his functional limitations. Claimant first asserts that one of the representative jobs identified by the vocational expert - production assembler - is non-existent. The *Dictionary of Occupational Titles ("DOT")* has no job identified under the number stated by the vocational expert - *DOT#* 715.697-094. The ALJ altered that number to *DOT#* 692.685-2715.697-094 but that number is also not a valid number under the *DOT*. While this discrepancy is bothersome, the vocational expert and ALJ did identify three other jobs that Claimant could allegedly perform. Thus, the error is harmless - even with the elimination of this job for consideration at step five.

Claimant next contends the ALJ failed to include a limitation in the ability to grasp in his questioning. On June 7, 2011, Dr. Mohammed Quadeer performed a consultative physical examination of Claimant. Among his findings was a statement that Claimant's ability to effectively oppose the thumb to the fingertips was "weak" in the left thumb and his ability to grasp tools such as a hammer was "weak" (4/5) in his left hand. (Tr. 197). A similar limitation was found in a treatment record from NeoHealth Westville

Family Medical Center which noted Claimant was "unable to touch all fingers, particularly on L hand . . . ." (Tr. 212). However, Dr. Quadeer also found Claimant's grip strength was 5/5, bilaterally strong and firm. He also determined Claimant was able to do both gross and fine manipulation with the hands. Claimant's fingertip to thumb opposition was adequate. (Tr. 201).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th

Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence. The level of minor restriction in the ability to grasp found in the assessment does not require additional restrictions in the RFC given Dr. Quadeer's report.

Claimant also asserts the ALJ should have included a restriction for using an assistive device in his RFC. Claimant was prescribed a walking boot and cane by Dr. Tye Ward in September of 2012. (Tr. 308). However, Dr. Ward also noted the left lower extremity was normal on inspection. Palpation was normal. Range of motion was normal. Dr. Ward noted no joint instability in the left leg. The question for the ALJ to consider is not whether the assistive device was prescribed but rather whether it was medically required. Spaulding v. Astrue, 2010 WL 2075043, *4 (N.D. Okla.) citing Soc. Sec. R. 96-9p. Claimant has not shown that the use of a cane is medically required, given Dr. Ward's objective medical findings of normality in the left lower extremity.

Claimant also contends the ALJ did not include all of his mental limitations in the questioning of the vocational expert. On November 16, 2011, Dr. Janice B. Smith completed a mental RFC assessment form on Claimant. She determined Claimant was markedly restricted in the functional areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the

general public. (Tr. 239-40). She also found Claimant was moderately limited in the areas of that ability to maintain attention and concentration for extended periods, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Id.

In her narrative statement, Dr. Smith states that she anticipated improvement once treatment for the mental condition has been adjusted. She further stated that Claimant

> appears to be able to do simple one- and two-step tasks that do not require strong short-term memory abilities. He is able to work under routine supervision. He is able to complete a normal work day and work week from a mental standpoint, and he can adapt to a work setting. He is able to work in a setting in which he is required to have only incidental and intermittent contact with coworkers and supervisors to accomplish work goals. He cannot relate effectively to the general public.

(Tr. 241).

The ALJ accorded "significant weight" to Dr. Smith's opinion "because she is deemed an expert and highly knowledgeable in the area of disability and because her opinion is largely consistent with the record as a whole." (Tr. 23). Claimant suggests the ALJ should have included the moderate limitations found by Dr. Smith in the RFC assessment and the questioning of the vocational expert.

"[A] moderate impairment is not the same as no impairment at all." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The

ALJ gave significant weight to the opinion but ended up selectively choosing among the opinions within Dr. Smith's assessment. The fact remains that an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Id. On remand, the ALJ shall consider the totality of the moderate and marked limitations in both the RFC and the hypothetical questioning of the vocational expert.

**Consideration of Medical Opinion Evidence**

Claimant asserts the ALJ failed to properly consider the opinion of Dr. George Jennings. On January 26, 2012, Dr. Jennings completed a mental RFC assessment form on Claimant. He found Claimant was severely limited in the areas of the ability to work in coordination with or proximity to others without being distracted by them; ability to interact appropriately with the general public; ability to ask simple questions or request assistance; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to travel in unfamiliar places or use public transportation. (Tr. 309-10). Dr. Jennings found Claimant

10

was markedly limited in an additional nine functional areas while he determined Claimant was moderately limited in four categories. In short, Claimant was found to have some degree of limitation in all functional areas. Id.

The ALJ gave Dr. Jennings' opinion "little weight" finding it inconsistent with the treatment records at CREOKS where Dr. Jennings attended Claimant. The records indicate Claimant suffers from "moderate" problems in feelings/mood/affect, thinking/mental/process, and interpersonal. (Tr. 23). These records are disturbingly limited.

The ALJ's analysis of this treating physician's opinion skips the first required analysis as to whether the opinion is entitled to controlling weight and immediately assesses a reduced weight to the opinion. The ALJ essentially assesses this treating physician's opinion as he would have any other medical opinion evidence.

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

11

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

On remand, the ALJ shall reassess Dr. Jennings' opinion as a treating physician. He shall proceed through the complete Watkins analysis. Thereafter, the ALJ shall re-evaluate his RFC assessment and the hypothetical questions that he poses to the vocational expert.

### Credibility Determination

The ALJ found Claimant was not "fully credible." He based this assessment on inconsistencies in the date he last worked, where he was located and what he was doing when last he hallucinated about seeing snakes, his criminal history and "willingness to break the law", his alcohol consumption, and the fact Claimant's alleged limitations in activities of daily living "cannot be objectively verified with any reasonable degree of certainty. The ALJ also found inconsistency in Claimant's testimony regarding the side effects of drugs he was taking. (Tr. 23-25).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68

13

F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372

(10th Cir. 2000). This Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and is supported by substantial evidence.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 28th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE